**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2020-LOOP, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2020-LOOP AND THE COMPANION LOAN HOLDERS, AS THEIR INTERESTS MAY APPEAR,

       Plaintiff,

       v.

181 WEST MADISON PROPERTY LLC, a Delaware limited liability company; and UNKNOWN OWNERS and NON-RECORD CLAIMANTS,

       Defendants.

Case No.: 1:26-cv-03416

Hon. Robert W. Gettleman

Magistrate Judge Young B. Kim

## ORDER APPOINTING RECEIVER

This matter coming for consideration on the Motion for Appointment of Receiver ("**Motion**") filed by Plaintiff Wells Fargo Bank, National Association, as Trustee, for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2020-LOOP, Commercial Mortgage Pass-Through Certificates, Series 2020-LOOP, and the Companion Loan Holders, as their interests may appear ("**Plaintiff**"), requesting the entry of an order ("**Order**") appointing a receiver in this matter pursuant to Federal Rule of Civil Procedure 66, the Court having jurisdiction to hear and determine the Motion, and after consideration of the factual allegations contained in the Verified Complaint for Foreclosure and Other Relief ("**Complaint**") and the legal arguments contained in the Motion:

IT IS HEREBY ORDERED:

1.      This Court hereby appoints Matthew D. Mason of Hilco Real Estate, LLC ("**HRE**"), as the receiver for the Property ("**Receiver**") in this matter effective immediately.

2.      The Receiver shall, and before performing any duties, execute and file a bond in the amount of $100,000.00 ("**Bond**").  The Bond shall be from an admitted surety insurer.

3.      The "Receivership Estate" or "Property," as those terms are used herein, comprises all of the real, personal, tangible and intangible property of 181 West Madison Property LLC, a Delaware limited liability company ("**Borrower**"), described in the Complaint,  and any other property that secures the Loan as described in the Complaint, including the Mortgage, with the exception of funds in cash management, escrow, or reserve accounts in the possession or control of Plaintiff.  Without limiting the foregoing, the Receivership Estate includes:

(i)      the real property and improvements that are located at 181 West Madison Street, Chicago, Illinois 60602 ("**Property**"), and are more particularly described in the subject Mortgage; and

(ii)     all Personal Property (as that term is defined in the Mortgage), including, but not limited to, cash and security deposits derived from the Receivership Estate, rents, profits maintenance materials, supplies, equipment, and tools. For the avoidance of doubt, the Personal Property includes, but not limited to, accounts; records; furniture; fixtures, appliances; keys; building access cards; combinations for locks or other access codes/devices; equipment software; intellectual property, user IDs, passwords; websites; computer systems, with access information, if any, to operate the systems of the building (i.e. security systems, communication systems, HVAC control systems, etc.); correspondence; credit and charge card documents; leases; laundry facilities; recreation facilities and equipment; utility rights and deposits; contract deposits;

2

insurance policies; payment and performance bonds; licenses; rights; permits; orders; books; inventory of parts; sales tax certificates and sales tax reports; telephone and facsimile numbers; email addresses; instruments; employment agreements; plans and specifications; service agreements; management agreements; federal and state taxpayer identification numbers; and information and materials and such other personalty as may be found on or off the Property which relates in any manner to the management, ownership or operation of all or any portion of the Property, with all rents, issues, income and profits of the foregoing and all other interest granted to Plaintiff under the Mortgage.

4. The Receiver shall be entitled to compensation for its services at a not-to-exceed monthly amount of the greater of 1.0% of gross revenue or $25,000.

5. In the event the Receiver coordinates a court-approved sale of any individual property within the Receivership Estate, Receiver shall be entitled to a disposition fee equal to twenty-five basis points (25%) of the gross sale price.

6. Receiver may retain the services of a third-party property management company ("**Receiver's Property Management Company**") to manage and operate the Property, subject to receipt of Plaintiff's written consent. The Receiver may pay to Receiver's Property Management Company such management fees as agreed to by Plaintiff in writing, subject to Court approval. Receiver and Receiver's Property Management Company shall also be reimbursed for all reasonable out-of-pocket expenses incurred during the receivership, subject to Court approval. Receiver shall be entitled to pay such compensation from receivership funds in Receiver's possession, and all payments shall be added to the total indebtedness owed by Borrower to Plaintiff. In the event there are insufficient funds from the operation of the Property to pay all amounts due to Receiver, Plaintiff may, in its sole discretion, fund such amounts to Receiver,

evidenced by Receiver's certificates, and all payments shall be added to the total indebtedness owed by Borrower to Plaintiff.  All such monies advanced by Plaintiff shall constitute a perfected lien upon the Property prior and superior to any right, title, interest or lien of Borrower or any of the other parties to this action, shall accrue interest thereon at the rate set forth in the Loan Documents being foreclosed in this action and shall be entitled to priority payment prior to the payment of any other expenses associated with this cause or the repayment of the monies due to Plaintiff under the Loan Documents. Nothing contained in this Order shall be construed as obligating or permitting Receiver to advance its own funds to pay for any costs or expenses of the Receivership Estate.

7.    In addition, Receiver shall be reimbursed for all expenses incurred on behalf of the Receivership Estate pursuant to the terms hereof.  The Receiver must include statements of account in its quarterly reports filed with the Court (which shall include the fees of the Receiver, Receiver's Property Management Company, their consultants, agents, employees, legal counsel (if any) and professionals), and serve a copy on all parties for the time and expense incurred in the preceding quarter. Any objections to each of the Receiver's statements of account, if any, must be made within ten (10) days of notice of the statement. If an objection, which must be made on a line-item basis with a statement of the reason for such objection, is timely filed and served, the specific items objected to in such statement of account shall not be paid absent further order of the Court. Failure of a party to object within this ten-day period shall constitute a waiver of that party's objection(s) to the fees for that period. The Receiver's receipt of interim fees is subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of the Receiver's services.

8.      The Receiver's Property Management Company, subject to replacement by Receiver consistent with this Order, is authorized to act on behalf of the Receiver as its authorized representative, with the full force and power and protections of the Receiver to carry out the duties and obligations of the Receiver as set forth herein including without limitation obtaining turnover, possession and control of the Property in accordance with the provisions of this Order.

9.      After filing the Bond, and subject to any restrictions set forth herein, Receiver is hereby empowered with all the powers and duties relating to collecting, controlling, managing, conserving, and protecting the receivership property, including the following:

a.      *Possession.*   Receiver shall take exclusive possession and control of the Receivership Estate, including all the rents, prepaid rents, security deposits, storage fees, parking fees, lease payments, profits, revenue and income thereof (collectively, the "**Rents and Profits**");

b.      *Operation and Management.*   Receiver shall have the power to operate and manage the Property, and the ongoing business on the Property, and to safeguard the Property, making or authorizing such expenditures and repairs as are needed to keep the Property in good and rentable condition, subject to Plaintiff's advance approval for unbudgeted individual expenditures in excess of $10,000.00, except for expenditures for emergencies, payroll and taxes;

c.      *Receiver's Agents.*   Receiver is authorized to appoint or hire and pay such agents, professionals, independent contractors, and employees as may be needed to assist Receiver in operating and managing the Property, including Receiver's Property Management Company, provided the amount of compensation paid to such parties must be comparable to that charged by similar parties for similar services;

d.      *Legal Counsel.*   Subject to Court approval, Receiver is authorized to hire independent legal counsel, if needed and as determined by Receiver, among other things, to defend

5

or commence any lawsuit with regard to the Property, and to pay such counsel for their services at rates Receiver deems appropriate for the services provided, subject to Court approval;

e. *Employees.* Receiver and Receiver's Property Management Company are authorized to hire employees at the Property and pay such employees, without any liability or cost to Receiver or Receiver's Property Management Company. All costs pertaining to employees at the Property arising out of the employer-employee relationship, including, salaries/wages, benefits (including vacation, sick and personal days), employment-related legal costs, employee taxes, costs incurred in connection with governmental laws and regulations and insurance rules, and such other expenses are operating expenses to be paid out of the Receivership Estate. To the extent Receiver desires to terminate the employment of any of Borrower's employees, such termination shall be conducted in a manner so as to avoid applicability of the WARN ACT (as defined herein) or any similar state statutes or regulations. Borrower or any management companies engaged by Borrower (as appropriate) will be solely and exclusively responsible for (i) any claims or liabilities that arose prior to the appointment of Receiver that are in any way related to an employee's employment with or separation from Borrower or any management companies engaged by Borrower, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans, and (ii) liabilities existing prior to Receiver's appointment related to the Worker Adjustment and Retraining Notification Act ("**WARN ACT**"), 29 U.S.C. § 2101, *et seq.*, and liabilities existing prior to Receiver's appointment related to the Consolidated Omnibus Budget Reconciliation Act ("**COBRA**"), or similar state statutes or regulations;

f. *Existing Bank Accounts and Credit Cards.* Receiver is authorized to take possession of, or issue demands for, the freezing and turnover of funds upon any financial

6

institution that Receiver has determined is a depository of funds belonging to, or arising from, Borrower and/or the Property, whether such accounts be titled in the name of Borrower or not, and to indemnify the institution upon which such demand is made on behalf of the Receivership Estate if Receiver deems such indemnification necessary.  All banks and other financial institutions, upon presentation of a copy of this Order, shall provide access to any bank accounts titled in the name of Borrower or pertaining to the Property and copies of any requested records regarding any such accounts to Receiver. Receiver is authorized to (i) operate, maintain, open, transfer, close and/or change all bank and trade accounts required for the ordinary operation of the Property, so that all such accounts are in the name of Receiver; provided, however, that Receiver shall deposit monies and funds collected and received in connection with the Receivership Estate and/or Property at federally-insured banking institutions or savings associations that are not parties to this action; (ii) take possession, custody and control of all credit card merchant accounts, and related deposits, such as Visa, MasterCard, American Express, Discover and otherwise required for the ordinary operation of the Property, whether such funds be in accounts titled in the name of Borrower or not, and to take all reasonable steps necessary to enter into, maintain compliance under, or secure the continuation or renewal of such agreements affecting the Property; and (iii) utilize any federal or state taxpayer identification numbers relating to the Property (including those of Borrower) in connection with the Property;

g.     *Utility Services and Deposits*.  Receiver is authorized to issue demands, in the name of the Receivership Estate, upon public utilities which the Receiver determines provide services to the Property and to transfer such services, together with any deposits held by the utility, to the exclusive control of the Receiver. Regardless of their internal policies, no utility provider currently providing gas/steam, electric, water, sewer, trash, phone, cable, internet, or other utility

services to the Property shall be permitted to terminate such service or refuse to authorize any new account based upon unpaid bills for services rendered prior to the appointment of the Receiver or during the term of the Receiver, and further added by the terms of this Order, any utility service provider to the Property is commanded to open an account without any deposit in the Receiver's or Receiver's Property Management Company's name, but using the Borrower's account information and that the Receiver is not responsible for any utility bills accruing prior to its appointment as the Receiver. Receiver has the power to procure or maintain appropriate utility services for the Property;

h.     *Post Office Box*.  Receiver is authorized to: (i) issue demands in the name of the Receivership Estate upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as may have been used by Borrower and/or its agents for the receipt of rent, income, and other mail related to the Property; (ii) open and review mail that appears to Receiver to pertain to the Property, whether or not directed to Borrower or any of their respective related parties or their respective representatives; and (iii) direct the U.S. Postal Service that mail to Borrower and/or to the Property be redirected and released to Receiver;

i.     *Demand for Deposits.*  Receiver is authorized to demand deposits from available leases and other records, compute the amount of deposits collected by Borrower and/or its employees and agents from tenants for security or any other purposes, demand the surrender to Receiver of such deposits by Borrower and/or its agents who collected them and take appropriate action to enforce the turnover of such deposits;

j.     *Pre-Receivership Bills.*  Receiver is authorized to pay only current operating expenses associated with the Property incurred by Receiver subsequent to his appointment,

8

including, without limitation, Receiver's fees and administrative expenses. Receiver may not use funds of the Receivership Estate to pay any bills for goods or services contracted for or provided in connection with the Property, or to Borrower and/or its agents, prior to the date of this Order, unless such payment is reasonably necessary or beneficial to enable Receiver to continue to operate the Property as determined by Receiver in its sole discretion. Neither the Receiver nor the Receivership Estate shall have any liability for any obligation, duty, or expense that was incurred prior to the date of the Receiver's appointment as the Receiver over the Receivership Estate;

k. *Insurance.* Receiver is authorized to determine whether adequate insurance is in place, and if not, to order and pay for such insurance from available funds; provided that such insurance shall, at a minimum comply with the Loan Documents. Receiver shall be the named insured or be an added named insured on all policies. Plaintiff and Borrower shall be named as additional named insureds on all such insurance policies, as applicable. Borrower is prohibited from canceling or making any modifications to the existing insurance coverage for the Property. Receiver is authorized in his discretion to terminate any existing policies and to procure policies of insurance as are customary for similarly situated properties and as he deems necessary. Any refund or return of an unearned premium shall be paid to Receiver and be property of the Receivership Estate. No insurance company shall be permitted to terminate coverage or refuse coverage for the Property based upon prior unpaid premiums, claims history or because of the appointment of Receiver pursuant to this Order. Any insurance company insuring the Property, upon presentation of a copy of this Order, shall provide copies of any insurance policies, settlement agreements, claims history report or loss runs pertaining to the Property as may be requested by Receiver. No insurance company may cancel its existing current-paid policy as a result of the appointment of Receiver, without prior order of this Court. Subject to Plaintiff's approval,

9

Receiver may, with reasonable written notice to Borrower, take control of, negotiate and/or settle any pending or potential insurance claims concerning the Property, with the proceeds to be remitted to the Receivership Estate. The costs of all insurance premiums, deductibles and retentions, including those relating to insurance policies placed by Receiver, are to be paid out of the Receivership Estate as an operating expense and shall not be a liability of Receiver or Receiver's Property Management Company;

l. *Right to Contract.* Receiver shall be the exclusive manager and leasing agent for the Property. Receiver may negotiate, make and enter into, modify or terminate without payment of liquidated damages or penalties, leases, contracts, license agreements (subject to Plaintiff's approval) or any other agreements affecting any part or all of the Property. However, Receiver may not execute any amendment, modification or new contract, lease or agreement for an amount exceeding $5,000.00 (other than leases executed in the ordinary course of business, ordinary and necessary trade accounts payable or other expenditures ordinarily and necessarily incurred in the operation of the Property) or a period exceeding one year without Plaintiff's approval;

m. *Tenant Improvements.* Subject to the provisions of paragraph 9(b) and (l) above, Receiver is authorized to expend sums from the Receivership Estate that, in Receiver's opinion and subject to Plaintiff's approval, are required to make the Property operable or to keep the Property in good and operable condition;

n. *Website.* Receiver and Receiver's Property Management Company are authorized to take possession of and continue the use and operation of the website affiliated with the Property. Borrower shall cooperate with Receiver to provide all credentials, passwords, and

10

access instructions for the use of same. Receiver and Receiver's Property Management Company shall have no liability relative to the continued use of the Property website.

o. *Operating Budget, Income Statements and Balance Sheets.* Receiver shall develop and maintain an annual monthly operating budget, to be presented to Plaintiff or its agent for approval within 60 calendar days of the date of this Order, that will serve as the basis for monthly requisitions and expenditures to fund operations. Not more than 20 days following a written request by Plaintiff, Receiver shall deliver to Plaintiff an audit against the operating budget versus the actual expenditures for any completed monthly or quarterly period. Receiver shall also prepare such further income statements and balance sheets as are normal and customary for hospitality management;

p. *Distribution of Funds.* If Receiver determines that the Receivership Estate possesses funds in excess of that needed to pay all of its operating costs, including property taxes, outstanding bills and obligations and Receiver's fees, then Receiver shall make distributions to Plaintiff, with such sums to be applied by Plaintiff in the manner provided under the Loan Documents as defined in the Complaint, or as otherwise determined by the this Court, provided that such distributions shall not affect the underlying foreclosure action or modify Borrower's performance dates or obligations in any way under the applicable Loan Documents. The receipt and application of any monies to the indebtedness due and owing to Plaintiff shall not operate as a cure to any of Borrower's defaults under the applicable Loan Documents, nor shall such application reinstate the loan nor act to bar or estop Plaintiff from proceeding with this foreclosure action or proceeding with any other remedies available to Plaintiff;

q. *Disbursements.* Notwithstanding anything to the contrary in this Order, without the approval of Plaintiff, Receiver shall not expend or disburse more than $5,000.00 at

11

any one time to any single vendor or invoice except for budgeted expenses, emergency and/or safety repairs to the Property and normal or customary obligations of the Property, including, but not limited to, payroll and taxes, and nothing in the Court's order shall obligate Plaintiff to lend or disburse any funds or amounts to Receiver;

r.  *Rents and Profits.*  Receiver may demand, collect, and receive all rents, revenues and profits for the Property or any part of it that are owed, unpaid and uncollected as of the effective date of this Order, or hereafter to become due, including, but not limited to, all tax and insurance refunds of any kind (whether such refunds are due for a former, current or future taxable or policy period);

s.  *Licenses.*  Receiver may obtain and pay any and all fees associated with any lawful license or permit required to operate the Property, including but not limited to any liquor license, and, to the extent permitted by law, exercise the privileges of any existing license or permit issued in connection with the Property or any business transacted with respect to it, until further order of the Court, and to do all things necessary to protect and maintain said licenses and permits, including, but not limited to, taking such license or permit in the name of Receiver or a nominee of Receiver.  Receiver is authorized and directed to take possession of and operate in the place of Borrower and its affiliates and agents under all liquor licenses for the Property, even if not in the name of the Borrower (the "**Liquor Licenses**"), together with all permits associated therewith, and to take any action permitted thereunder.  To the extent allowed by law, Receiver shall request that the relevant liquor licensing authorities transfer the Liquor Licenses, including any associated permits, to Receiver or its designee.  Borrower and its affiliates and agents shall: (i) cooperate in the transfer of the Liquor Licenses to Receiver or its designee; (ii) execute and deliver such documentation and certificates as are necessary or required to operate, transfer or cancel the Liquor

Licenses; and (iii) not engage in any acts that would interfere with Receiver's operation, transfer or cancellation of the Liquor Licenses;

t.       *Taxes.*  Receiver may pay any taxes due in connection with the operation of the Property and, with Plaintiff's consent, appeal any past, present or future assessments by the taxing authorities.  To the extent permitted by the Internal Revenue Service regulations, Receiver may obtain his own tax identification, sales tax, reseller and similar numbers and accounts and prepare and file tax returns arising in connection with the operation and management of the Property as may be required by law.  The responsibility for such filings and payments prior to the appointment of Receiver lies exclusively with Borrower and its agents, employees, and representatives, as applicable.  Receiver and Borrower, as the case may be, shall provide to the other copies of any tax returns filed with respect to the Property.  Receiver shall not be required to prepare and file any tax returns for Borrower or affiliates (including without limitation, income, personal property, commercial activity, gross receipts, sales and use or other tax returns) other than to provide Borrower with information in Receiver's possession that may be necessary for Borrower or its affiliates to prepare and file their tax returns.  Borrower shall cooperate and provide to Receiver any information needed to file any tax returns for the Property; and

u.       *Marketing and Sale of the Property and Loan Assumption.*  Subject to Court approval and prior written consent and approval of the Plaintiff, the Receiver is authorized to market the Property for public or private sale, to retain any marketing analysts, advertisers or brokers (with the retention of any broker subject to Plaintiff's approval), to prepare the Property for sale, and to undertake any and all other duties associated with the marketing and sale of the Property under such conditions as the Receiver deems appropriate, including executing documents necessary for the consummation of a sale, with such sale being subject to Court approval (and over

13

Borrower's objection if so ordered by the Court). In connection with any sale of Property by the Receiver in accordance with this Order, Plaintiff shall have the right, but not the obligation, to permit a purchaser of the Property to assume the loan secured by the Property and to make any modifications to such loan to which Plaintiff agrees in writing. The Receiver is hereby authorized and directed to execute any documentation on behalf of Defendant as its attorney-in-fact to effectuate such assumption and modification of the loan secured by the Property.

10. Receiver shall file quarterly written reports with this Court within 30 days of each quarter's end. Each report shall be prepared with a case caption, signed by Receiver, and filed with the Clerk by or on behalf of Receiver, with copies to be served upon the attorneys of record for all parties in the case. Each report shall include (i) a computerized monthly summary of revenue and disbursements; (ii) a comparison of actual revenues and disbursements to the budgeted amounts on an accrual basis as that term is commonly understood in the accounting profession; and (iii) any other information as required by this Court.

11. As of the effective date of this Order, all persons now in possession of any part of the Receivership Estate are directed to surrender possession thereof to Receiver, and all tenants and guests in possession of any such property, and such other persons or corporations as may be lawfully in possession thereof are directed to attorn to Receiver and to pay over to Receiver all rents and amounts for such property now due and unpaid, or that may hereafter become due, until further order of this Court.

12. Within 30 days of taking control and possession under this Order, Receiver shall file an inventory itemizing all personal property of which he has taken control or possession.

13. Subject to further order of this Court, Receiver may institute and prosecute all proceedings and actions at law, or in equity as may in its judgment be reasonably necessary for the

proper maintenance, management, operation, leasing, and protection of the Receivership Estate, including actions to recover rents, revenue, profits and other income due with respect to the Receivership Estate; provided, however that the Receiver shall consult with and obtain written approval of Plaintiff.

14. Notwithstanding anything in this Order to the contrary, Plaintiff is hereby permitted to proceed with and exercise any and all available rights and remedies under the Loan Documents, including, without limitation, judicial foreclosure, power of sale or as otherwise provided under the Loan Documents, should Plaintiff so elect. Plaintiff shall notify Receiver of any such sale or other exercise of its rights and/or remedies, and Receiver shall cooperate with Plaintiff in the consummation of any such action or actions, including, without limitation, execution of such deeds, bills of sale and other documents, instruments and agreements.

15. This receivership will continue for such time until the Court enters an order terminating him and discharging Receiver; provided that to the extent Receiver no longer desires to serve in that capacity, upon 30 days' prior written notice to Plaintiff and Borrower, Receiver may apply to the Court for termination of his appointment. Within 45 days of the completion of his duties pursuant to this Order, Receiver shall file a Motion for Approval of his Final Accounting seeking discharge by the Court from its responsibilities as Receiver herein. The Motion for Approval of Final Accounting shall include a final Report, summarizing all of Receiver's activities, providing a final accounting, and reporting the final disposition of any legal claims, and Receiver may incur legal costs and fees relative to all of these actions. To the extent the WARN ACT, or similar state or municipal statue, ordinance, or regulation applies, Plaintiff shall provide Receiver at least 75 days' notice of the closing of any such foreclosure sale such that Receiver is able to comply with applicable notice requirements to the employees under those statutes and/or

regulations. If for any reason Receiver is discharged prior to this Court's entry of judgment of foreclosure or the dismissal of this case, Plaintiff shall be entitled to designate a successor receiver. Upon termination of the receivership, Receiver shall have the right to retain sufficient funds to pay his final expenses and fees. In the event that funds on hand at the time of termination are insufficient, Plaintiff may, in its sole discretion, fund the shortfalls.

16. Upon receipt of a copy of a recorded trustee's deed upon foreclosure, the dismissal of the action upon which this receivership is based, written notice from Plaintiff that Borrower has cured the defaults existing under Plaintiff's Loan Documents or that Plaintiff has accepted a deed in lieu of foreclosure, the Receiver shall, without further order of the Court, turn over possession of the Receivership Estate to the then owner of the Property, and Receiver shall petition the Court to discharge Receiver as noted herein, provided that Receiver shall have first submitted his final report and accounting. Upon approval of Receiver's final accounting and termination by the Court, all lessors, lessees, customers, principals, investors, suppliers and creditors who are not a named party to the action shall be barred from seeking to enforce any claim, right or interest against Receiver and the indemnification of Receiver by the Receivership Estate shall survive the termination of this receivership. Notwithstanding the foregoing, the Receiver shall retain sufficient funds to pay Receiver's fees and expenses.

17. The Receivership Estate, Receiver and its affiliates and their respective employees, agents, attorneys and all professionals and management companies retained by Receiver, shall not be held liable for any claim, obligation, liability, action, cause of action, cost, expense or debts incurred by Borrower or its management company or affiliates. Neither Receiver nor Receiver's Property Management Company shall be responsible for payment of any costs, fees, charges, or expenses incurred with regard to the Receivership Estate prior to Receiver taking possession of

16

the Property, including (i) any claims or liabilities in any way related to an employee's employment with or separation from Borrower or any related management company for the Property and (ii) any compensation, benefits, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans or liabilities related to the WARN ACT, COBRA, or similar state or municipal statutes, ordinances, or regulations. Receiver shall not be required to use any bank account amounts, revenues, profits, or monies collected by Receiver for payment of any of the foregoing costs, fees, charges, and expenses.

18.     No risks or obligations incurred by Receiver in connection with the receivership shall be the personal risk or obligation of Receiver but shall be a risk or obligation of the Receivership Estate. Without limiting any other rights or immunities which Receiver may have at law or in equity, Receiver shall not have any liability for acts or omissions arising within the scope of the receivership or this Order, except to the extent that liability arises from the gross negligence or willful misconduct of Receiver. Receiver and Receiver's Property Management Company shall not be personally liable for torts committed in the performance of receivership duties; any liability shall be in Receiver's official capacity only, to be satisfied solely from Receivership Estate. Those parties acting on behalf of Receiver in connection with this Order shall be protected and privileged, having the same protections of the Court as Receiver.

19.     If the proceeds from the Property are insufficient to permit Receiver to perform its duties hereunder, Receiver is authorized to allocate such funds as may be available to the cost of performing such duties as Receiver may reasonably determine and to the extent other duties are not capable of performance by reason of such lack of funds, Receiver shall be relieved from performing them and Receiver may withdraw as Receiver upon ten (10) days written notice to the Parties and this Court. Additionally, in the event of a note sale or transfer of the Loan Documents

to a new lender, Receiver may withdraw as Receiver upon ten (10) days written notice to the interested parties and this Court.

20.     Neither Receiver, nor any affiliate including their respective directors, officers, shareholders, employees or agents, shall have any liability for any violations of Environmental Laws (as defined below) relating to the Property and whether or not such violations arose before or after entry of this Order.  The action or inaction of Receiver in connection with services under this Order shall not give rise to any claim against Receiver, or any of its respective directors, officers, shareholders, employees, or agents concerning any past, present or future violations of Environmental Laws regarding the Property except to the extent any such violations were expressly caused by a Receiver's breach of fiduciary duties committed in bad faith by Receiver, intentional breach of fiduciary duties under this Order by Receiver, or the breach of fiduciary duties arising from reckless indifference to the fiduciary duties arising under this Order.  As used in this Order, "**Environmental Law(s)**" shall mean and include, but is not limited to any present and future federal, state and local laws, statutes, ordinances, rules, regulations and the like, as well as common law relating to the safety, welfare and protection of the environment, human health or any natural resources.  Receiver is not, nor shall it be deemed to be, an owner or operator of the Property for purposes of any Environmental Law.

21.     The Receivership Estate shall indemnify and hold harmless Receiver and its current and former affiliates, directors, officers, partners, agents, employees, consultants, subcontractors, representatives or control persons, including but not limited to Receiver's Property Management Company, from any claims made by persons not a party to this Order, which claims are related to or arise out of the actions and operations of this receivership, except in a case where Receiver has knowingly acted outside the scope of the receivership authority, committed fraud, intentionally

misrepresented Receiver's ministerial authority as Receiver, or acted in a grossly negligent manner.

22.     No individual or entity may sue or otherwise initiate any other legal action against Receiver, its agents, employees and/or affiliates, including but not limited to Receiver's Property Management Company, with respect to the Property without first obtaining the permission of this Court.  It is further ordered that, except by leave of this Court, all lessors, lessees, customers, principals, investors, suppliers or creditors seeking to enforce any claim, right or interest against Borrower are barred by this Order from using any "self-help" or doing anything whatsoever to interfere in any way with Receiver in the conduct of the Receivership Estate; provided, however, that nothing contained in this Order shall prohibit or restrain Plaintiff from initiating and/or completing a sale by judicial foreclosure of the Property, or any portion thereof, and thereafter taking title and possession thereto.

23.     Any brokerage firm, financial institution, bank or mutual fund or any other person or entity having possession, custody or control of any brokerage, checking or deposit account or other property that receives actual notice of this Order, by personal service, electronic mail (email), facsimile transmission or otherwise, shall serve on Receiver a statement with respect to each such account or asset, the balance in the account or description of the assets.

24.     Receiver shall maintain, in his name, one or more bank accounts, each fully insured by the FDIC (collectively, the "**Account**"), into which he shall deposit all funds that he receives and from which he shall pay any authorized expenses and costs incurred during the duration of the receivership.

25.     Notwithstanding anything set forth in the Loan Documents to the contrary, the Receiver is authorized and directed to use income from the Receivership Estate and all other funds

19

and monies coming into his hands pursuant to this Order (other than security and utility deposits received by Borrower under any Lease) as follows:

a. first, to the Receiver toward payment of the Receiver's compensation as approved by Plaintiff;

b. second, to the reasonable out-of-pocket third party costs and expenses incurred by the Receiver in the ordinary course of the performance of its duties in accordance with this Order;

c. third, to the payment of all monthly necessary and proper expenses arising from and after the date of this Order reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect the Borrower's Assets in accordance with this Order, provided, however, that the Receiver shall not expend in excess of $5,000.00 for any single repair, replacement or capital improvement without the prior written approval of Plaintiff or further authorization by this Court; and

d. last, on or before the last day of each calendar month after the date of this Order, all remaining income derived from the Receivership Estate, funds and monies to Plaintiff, for application against the outstanding amounts owed by Borrower under the Loan Documents, provided that the Receiver shall retain in its possession working capital reasonably required by the Receiver for operation of the Receivership Estate, which working capital held by the Receiver at any time shall not exceed $50,000 in the aggregate.

26.     The Court shall retain jurisdiction and supervision of all matters concerning Receiver and the Receivership Estate.  Receiver may seek instructions and additional authority from the Court upon written notice to Plaintiff and Borrower.

27.     The Receiver and the Parties to this action may, from time to time, on ex parte basis or noticed motion on shortened time, petition this Court for instructions in pursuance of this Order and further orders this Court may hereafter make.

28.     Bankruptcy – Plaintiff's Duty to Give Notice.  If the Plaintiff receives notice that a defendant files a bankruptcy case during the receivership, Plaintiff shall give notice of the bankruptcy case to the Court, to all parties, and to the Receiver as soon as practicable after the day on which Plaintiff receives notice of the bankruptcy filing.

29.     Bankruptcy – Receiver's Duties. If the Receiver receives notice that a petition for relief under the Bankruptcy Code, Title 11, United States Code ("Bankruptcy Code"), has been filed, and part of the bankruptcy estate includes property that is the subject of this order (for purposes of this paragraph, the "**Bankruptcy Estate Property**"), the Receiver shall have the following duties:

a.      *Turn over Bankruptcy Estate Property if no relief from stay is sought*. Receiver shall immediately contact Plaintiff and determine whether Plaintiff intends to move in the bankruptcy court for an order for (1) relief from the automatic stay, (2) adequate protection, and/or (3) relief from Receiver's obligation to turn over the Bankruptcy Estate Property 11 U.S.C. § 543(b)). If Plaintiff has no intention to make any such motion, Receiver shall immediately turn over the Bankruptcy Estate Property to the appropriate entity, either to the bankruptcy trustee, if one has been appointed, or, if not, to the debtor in possession, and otherwise comply with 11 U.S.C. § 543(b).

b.      *Remain in possession pending resolution.* If Plaintiff intends to seek relief from the automatic stay, the Receiver's obligation to turn over the Bankruptcy Estate Property, or to seek adequate protection, Receiver may remain in possession and preserve the Bankruptcy Estate Property pending the ruling on those motions. Receiver's authority to preserve the Bankruptcy Estate Property shall be limited as follows:

1.      Receiver may continue to collect Rents and Profits and other income;

2.      Receiver may make only those disbursements necessary to preserve and protect the Bankruptcy Estate Property;

3.      Receiver shall not execute any new leases or other long-term contracts without the approval of this Court and the Bankruptcy Court; and

4.      Receiver shall do nothing that would affect a material change in the circumstances of the Bankruptcy Estate Property.

c.      *Turn over property if no motion for relief is filed within thirty (30) days after notice of the bankruptcy.* If the bankruptcy court enters an order or the party who obtained the receivership fails to file a motion within 30 days after receipt of actual notice of the bankruptcy filing, Receiver shall immediately turn over the Bankruptcy Estate Property to the appropriate entity, either to the bankruptcy trustee, if one has been appointed, or, if not, to the debtor in possession, and otherwise comply with 11 U.S.C. § 543(b).

d.      *Retain bankruptcy counsel.* Receiver may petition this Court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that effect the Receivership Estate or the Receiver's ability to perform its duties.

**SURRENDER OF POSSESSION AND CONTROL OF PROPERTY**

30.     Within five (5) days from the date of this Order, or such other date to be determined by Receiver, Borrower and any and all persons or entities acting under their direction or on their behalf, including any of their respective agents, employees and/or affiliates who may have possession, custody or control of the Property, are directed and ordered to immediately surrender to Receiver possession and control of the Property, including, but not limited to the following:

a.      any and all bank accounts and credit card merchant accounts related to or held in connection with the Property, its operation or management thereof, and all revenues generated from the Property since the entry of this Order;

b.      all contracts, binders, or other agreements;

c.      all business records, including, but not limited to, books and records relating to the Property, books of account, ledgers, records of advance deposits and payments, computer software or data, merchant accounts, savings and checking account books, expense statements, and any other documents in any way relating to the income, expenses and operation of the Property;

d.      all invoices of current payables regarding the Property;

e.      all original leases, contracts and agreements and all modifications thereto regarding the Property;

f.      all permits, licenses, and contracts relating to the Property, including, but not limited to, any liquor licenses;

g.      all of Borrower's remaining property and assets related to the Property, including, without limitation, all accounts, inventory, rent rolls, books, documents, files, financial records, notices, licenses, permits, physical and virtual keys, fobs, security codes, passwords, access tools, point-of-service equipment, surveillance equipment and systems, computer equipment, elevator technology, warranties and all other agreements regarding the use,

23

management, sale, reservation, service and operations on, at or about the Property, maintenance and service contracts, insurance policies, and all other documents and items Receiver may reasonably request to carry on the management of the Property;

      h.     all vehicles and vehicle title and registration records used in the operation of the Property; and

      i.     inventory of and access to any safe deposit boxes.

31.     Any and all persons or entities acting under Borrower's direction or on its behalf are further directed and ordered to deliver to the Receiver all rents, revenues, issues, profits, and security deposits of and from the Property, which may yet come into their possession or come under their control.

32.     All of Borrower's current and former employees, agents, attorneys and directors shall promptly and fully cooperate with Receiver in connection with Receiver's performance of its duties and are prohibited from interfering with the powers or duties of Receiver. Borrower is further prohibited from directing anyone to interfere, in any way, with Receiver in the execution of this Order.

33.     Borrower's principals, members, partners, agents, employees and all other persons acting in concert with them, are restrained and enjoined from: (i) withdrawing, paying or otherwise transferring funds derived from the Property, except to Receiver; (ii) removing, disposing of, destroying, concealing, changing or altering any of the Property; and (iii) taking any action on behalf of Borrower or related to the Property without the express consent and permission of Plaintiff and Receiver.

34.     Pending further order of this Court, Borrower, its members, their officers, and each of their respective partners, members, directors, agents, servants, affiliates, representatives, and

24

employees, and all persons or entities acting under their control or in concert with them, or for them, and all other persons with actual knowledge of this Order, and each of them, shall not:

a. Commit or permit any waste on the Property or any part thereof, or suffer or commit or permit any act on the Property on any part thereof in violation of law, or remove, transfer, encumber or otherwise dispose of any of the Subject Property or the fixtures thereon, or the Subject Property or any part thereof;

b. Interfere in any manner with the discharge of Receiver's duties under this Order or the Receiver's possession of and preservation and maintenance of the Subject Property or related litigation, and shall not interfere with Plaintiff or the Receiver in any way connected with the Receiver's protection of Plaintiff's interests in the Property;

c. Interfere with Receiver's right to immediate possession of all accounts of Borrower holding rents and profits from the Property, and shall turn over all such funds held, wherever held, to the Receiver in furtherance of his duties in furtherance of the Receivership Estate;

d. Interfere with Receiver, directly or indirectly, in the management and operation of the Property and the collection of the Rents and Profits derived from the Property;

e. Collect, attempt to collect or keep the Rents and Profits derived from the Property or demand, collect, receive, or in any way divert or use any of the mail, income, royalties, rents, issues, profits, accounts receivable or other income from the Property and interfere in any manner with collecting or receiving any mail, income, rents, royalties, issues, accounts receivable, profits or substitution thereof;

f. Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in or dispose of the whole or any part of the Property (including the Rents

25

and Profits thereof), without the prior written consent of Receiver and Plaintiff; provided, however, that nothing contained in this Order shall prohibit or restrain Plaintiff from initiating and/or completing a sale by judicial foreclosure of the Property, or any portion thereof, and thereafter taking title and possession thereto; and

g.    Do any act that will, or will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Property (including the Rents and Profits thereof), or Plaintiff's interest in the Property and the Rents and Profits.

**IT IS SO ORDERED.**

Dated: _____, 2026                 ENTERED:

_____